IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LYNN HOLLAND,

              Plaintiff,

       v.

UNIFIED STRATEGIES GROUP, INC.

              Defendant.

NO.

DECLARATION OF BRIAN M. FALEY

BRIAN M. FALEY, under penalty of perjury of the laws of the State of Washington, declares as follows:

    1.    I am the CEO of Unified Strategies Group, Inc. ("USG"). I make this declaration based on my personal knowledge. USG is a Delaware Non-profit corporation with its principal place of business in Arlington Heights, IL.

    2.    USG was served via its Illinois Registered Agent with the Summons, Complaint, and Notice of Assignment to Judicial Department on August 25, 2017. Attached as **Exhibit 1** is a true and correct copy of the Complaint. Attached as **Exhibit 2** is a true and correct copy of the Summons. Attached as **Exhibit 3** is a true and correct copy of the Notice of Assignment to Judicial Department. The foregoing constitutes all of the process, pleadings, and order either served upon USG or filed in

DECLARATION          - 1

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
Fax 206 340-2563

the state court action. It is my understanding that the deadline for USG to remove the action has not expired. USG has not invoked or submitted to the jurisdiction of the Superior Court of the State of Washington for the County of Clark in any manner. No further proceedings have occurred in the state court as of the date of this Notice.

3.    At the time of her termination, Plaintiff was earning a yearly salary of $102,321.00.


I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED AND SIGNED on September _12_, 2017, at Arlington Heights, Illinois.


BRIAN M. FALEY

DECLARATION                - 2

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

ATTORNEYS AT LAW
2600 TWO UNION SQUARE
601 UNION STREET
SEATTLE WA 98101-4000
TELEPHONE 206 624-1230
FAX 206 340-2563

# EXHIBIT 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COPY
ORIGINAL FILED

AUG 2 5 2017

Scott G. Weber, Clerk, Clark Co.

COPY ☐

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

LYNN HOLLAND,

                        Plaintiff,

    v.

UNIFIED STRATEGIES GROUP, INC.,

                        Defendant.

No.   17 2 01954 6

COMPLAINT FOR DAMAGES

      COMES NOW, Plaintiff Lynn Holland, by and through her attorney of record, Robert S.

Milesnick, MILESNICK LAW, PLLC, and alleges:

### I. Parties

      1.      Plaintiff Lynn Holland ("Holland") was at all times material to this action, a

resident of Clark County, Washington and an employee who was employed by Defendant in

Vancouver, Clark County, Washington.

      2.      On information and belief, Defendant Unified Strategies Group, Inc. ("USG")

COMPLAINT FOR DAMAGES - 1

Holland v. Unified Strategies Group, Inc.

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

was at all material times a corporation conducting business and maintaining employees in Vancouver, Washington.

## II. Jurisdiction and Venue

3.     Jurisdiction is vested in this Court and venue is properly before this Court pursuant to RCW 2.08.010 and RCW 4.12.020 because actions that led to this cause of action occurred fewer than three years ago in Clark County, Washington and Defendant has the requisite number of employees.

## III. Statement of Facts

4.     Holland is a Caucasian female over the age of 40.

5.     Holland was initially hired as USG's National Account Sales Manager on August 3, 2012. In this position, she pursued national multi-site vending service contracts on behalf of USG members.

6.     After working in this position for approximately one year, Holland developed a new business model. Under this new model, USG would enter into relationships with petroleum distributors, retailer associations, grocery distributors, technology partners, or directly with independent convenience store operators to offer rebates for retailer purchases of convenience store products from participating consumer product manufacturers.

7.     On or around March 10, 2014, Holland sent a convenience segment business plan to CEO Brian Faley ("Faley") for review. Faley wanted to include a bonus structure that was triggered at 4,000 stores.

8.     Holland saw the changes made to the business plan and e-mailed Faley on or around March 14, 2014 regarding these changes. She said:

> "I ran through the update. It looks good! I tweaked a couple of
> formatting items, changed the % of retained redemptions to match

COMPLAINT FOR DAMAGES - 2

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

1
2

> the new financials, and adjusted a few sentences so they flow
> better. I attached a revised copy. Is the budget increase at 1,200
> stores based on adding personnel?"

3    9.    Faley responded as follows:

4
5
6
7
8

> "The salary increase is due to the extra bodies we will likely need
> to support a large initiative if it gets rolling to those levels. The
> bonus, unfortunately, isn't just for you and I. Although I would
> fight for that to be a healthy one if we are going to forgo a bonus
> up to the point of 4,000 stores. The big unknown is if 4,000 stores
> is a year away, 3 years, or never. I'll keep you posted if I change
> anything else."

9    10.    As communicated by Faley, the bonus payout was not for Holland alone, but

10   was to be divided between the key developers of the Convenience Marketers Association

11   ("CMA") program.

12   11.    As communicated by Faley, the bonus payout contained no mention that the

13   bonus was a form of incentivized profit sharing.

14   12.    Faley liked the final plan and asked Holland to prepare an official business

15
16   plan for the USG Board of Directors ("Board"). The presentation was edited and titled "The

17   USG Growth Plan Executive Summary."

18   13.    The economics of the "USG Growth Plan Executive Summary" stated the

19   following:

20
21
22
23
·24
25

> "2014 is the year for laying the ground work to build a book of
> programs, develop partnerships, and add convenience store
> "affiliate members". The expenses associated with 2014 are part of
> the existing budget, only redeployed away from vend management.
> Below are several projections for future years. Primary variable
> include the number of stores, and the average rebate per store.
> Secondary variable include the expenses. Of note is the column
> with 4,000 stores and $6,000 average rebate. At this level, the net
> profits from the CStore initiative cover the full cost of running the
> USG (based on 2014 budget). The 5,500 store column uses rebate
> and store numbers that are actual for Royal Buying Group. The
> final column uses the number of GasBuddy users along with the

COMPLAINT FOR DAMAGES - 3

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

1   average rebates for Royal Buying Group. This level of attainment
    would result in the average Elite level member earning a dividend
2   of $70,000 annually."

3
4   14.    Faley's added bonus provision stated that $480,000 would be provided after
5   the first 4,000 stores; $632,500 after 5,500 stores; and $690,000 after 6,000 stores.

6   15.    On or around March 20, 2014, the Board approved the "USG Growth Plan
7   Executive Summary."

8   16.    Holland's title changed from National Account Sales Manager to Vice
9   President of Business Development, CMA.

10  17.    For the next two and a half years, Holland spearheaded the development,
11
12  growth and foundation of CMA by national outreach and business development of store
13  locations in the convenience segment. Holland's job responsibilities and risk increased
14  exponentially in the new position, but she did not receive a salary increase. Holland's
15  financial incentive for the success of the program was all about the bonus set to occur at
16  4,000 stores.

17  18.    During this time, Holland was responsible for building, executing, and
18  growing the new organization, including, but not limited to, the convenience business
19  strategy, all branding, marketing strategies, marketing assets, sales strategies, sales and
20  marketing activities, process engineering, and designing and orchestrating all systems
21
22  development and technologies for compatibility with convenience store user-engagement.
23  She was not responsible for customer service or making the program operational. Those
24  functions were controlled by Ed Cunningham ("Cunningham"), Vice President of
25  Purchasing/COO.

    19.    Holland developed the CMA contracts, negotiated all aspects of the sales

COMPLAINT FOR DAMAGES - 4

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

contracts, and closed and finalized all CMA contracts. She was the face, point-person, and substantive expert on the CMA program and had full autonomy to represent the company within the petroleum and convenience store industries.

20.    Although Holland performed all business development and sales originations for CMA, she also took it upon herself to help Cunningham's department by training and leading his staff in CMA procedures and customer service, and attempt to merge the new CMA contacts into the existing USG work systems. Additionally, Holland assumed responsibility and obtained the purchase reports created by grocery distributors on behalf of retailers enrolled in the CMA program.

21.    In pursuit of her share of the promised CMA bonus, Holland's efforts resulted in the following number of stores to sign contracts with CMA, and formed the applicable substance of the CMA bonus:

- Southeast Asian American Store Owners Association ("SAASOA") – 1,500 stores
- Points to Partners ("PTP") – 100 truck stop locations
- PTP – Cstore – 200 stores
- ANZ Petroleum – 6 stores
- John's Fuel Service – 11 stores
- Holtzman – 15 stores
- EE Wine – 10 stores
- Empire Petroleum – 1,500 stores
- Reeve's Petroleum (Kyle's & Lonestar) – 13 stores
- CStore Pro – 1,000 stores
- GoEBT/CDE – 25,000 stores
- Southeast Petro Distributors ("SEPD") – 106 stores

22.    Taken together, by May 12, 2016, Holland had signed approximately 26,000 stores to the CMA program, almost five times the threshold for the $690,000 bonus the Board had approved and promised on or around March 20, 2014.

23.    On or around May 13, 2016, after the goEBT contract was signed, Holland e-

COMPLAINT FOR DAMAGES - 5

Holland v. Unified Strategies Group, Inc.

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

mailed Faley stating, "Brian, we are now the proud owners of at least 21,000 locations. Let me know when you can talk."

24.     On or around October 12, 2016, during a telephone conversation, Holland asked Faley when she could expect the CMA bonus to be distributed.

25.     For the first time ever, and directly contrary to what the terms of the "USG Growth Plan Executive Summary" provided and what Faley's own e-mail to Holland on or around March 14, 2014 stated, Faley told Holland that the bonus would not be distributed until after the CMA program was fully operational. This was the first mention that the program was not fully operational, and it was not explained why Holland, who as Vice President of Business Development for the CMA program, was suddenly being denied her bonus percentage for operational reasons that were entirely outside her job duties.

26.     Per the terms of the Board in the "USG Growth Plan Executive Summary" and in Faley's own communications, Holland had focused almost three continuous years of effort to the vital task of originating the national business interest and signing the business store locations across the country in order to meet the thresholds of the CMA bonus provision.

27.     Even after she had already met the bonus threshold approved by the Board, Holland continued to develop new store locations in her role as Vice President of Business Development.

28.     To assist the entire CMA program beyond her own hired position, Holland began assisting the operations side of USG with relation to implementing the contracted CMA stores.

29.     On or around October 31, 2016, Holland introduced a solution to obtain

COMPLAINT FOR DAMAGES - 6

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

missing purchase information and began personally calling and telling distributors to send invoices vs. quarterly reports in an effort to streamline CMA operations. This was not her hired role.

30.    On or around November 30, 2016, Holland e-mailed Faley to review a solution she proposed regarding new enrollees who first joining the CMA program's on-line enrollment process. This task was also not part of her hired role.

31.    On or around December 13, 2016, only four weeks prior to her termination, Faley e-mailed Holland and said, "Lynn, your check next week will include a $4,000 bonus. I appreciate your good efforts. Highest regards, Brian."

32.    On or around December 19, 2016, Holland e-mailed USG's Vice President of IT, Chris Stave ("Stave"), and Faley, and asked why there had been no contact from the CMA systems team lead, and no explanation about why there was a delay of needed development from the IT side affecting CMA operations.

33.    On or around January 3, 2017, Holland informed Faley that the CMA purchase team was only receiving 38% of purchase reports used to process and collect rebates and revenues. This, again, was not Holland's hired role.

34.    On or around January 4, 2017, Kathy Agustinksy ("Agustinksy"), USG's Chief Financial Officer, informed Holland of a salary increase.

35.    On or around January 5, 2017, Holland submitted a request to upload the SEPD group, which included 27 owned locations.

36.    On or around January 9, 2017, Holland asked Faley if she could help him prepare for the Board meeting and to give a status update of the CMA program. Holland's request was denied.

COMPLAINT FOR DAMAGES - 7
Holland v. Unified Strategies Group, Inc.

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

37.     On or around January 10, 2017, Holland emailed CMA system team lead to confirm operational steps were completed to upload and welcome into the program 106 SEPD tenant locations.

38.     Between January 13, 2017 and January 16, 2017, Holland corresponded with large CMA participant Empire, and with its regional and territory managers to confirm their active participation to finalize the enrollment of their 1,500 stores.

39.     On or around January 17, 2017, Holland was suddenly and unexpectedly terminated.

40.     On or around January 20, 2017, Faley e-mailed Holland and told her that if she continued working until the following Friday and transferred her CMA knowledge to Cunningham, USG would pay her for an extra week of work. If not, she would be terminated immediately. Holland, who was scheduled to travel to Dallas for a CMA presentation and to finalize the Empire contract, agreed to assist Cunningham.

41.     On information and belief, sometime after her termination, CMA hired William Goodlin ("Goodlin") as National Sales Manager for the CMA program. Goodlin's title reflects the fact that he would not be tasked with doing what Holland had done as Vice President of Business Development for the CMA program because Goodlin would largely maintain the newly created 26,000 store location strong CMA program using the infrastructure, contacts and business model Holland had successfully created during almost three years spent implementing the CMA program.

42.     Because Goodlin was hired after Holland had already completed her work that was vital for the creation and ongoing success of the CMA program, neither Faley nor any other members of the original CMA founding team would be required to share the $690,000

COMPLAINT FOR DAMAGES - 8

Holland v. Unified Strategies Group, Inc.

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

promised bonus with anyone performing new marketing, sales and/or business development work for the CMA program as is required for Holland.

### IV. Causes of Action

#### A. First Cause of Action – Washington State Wage Violations

43. Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

44. In violation of Washington State wage laws, Defendant unlawfully refused to pay Plaintiff a promised bonus, as stated in the "USG Growth Plan Executive Summary", by terminating her employment.

45. Holland spent almost three years building the CMA organization. It was her business development work acquiring and signing thousands of store location contracts that satisfied not only the 4,000 base level of the CMA bonus she had been promised by Faley and the Board, but also the uppermost 6,000 store location level under the CMA bonus.

46. Despite satisfying the provisions outlined in the "USG Growth Plan Executive Summary", and despite Faley's own statements on March 14, 2014 that he and Holland should receive a healthy bonus because for several years they would have to forego any bonus until reaching 4,000 stores, USG failed to pay Holland the bonus she earned after meeting the 6,000 store level.

#### B. Second Cause of Action – Unlawful Discrimination Under the Washington Law Against Discrimination ("WLAD") Based on Gender

47. Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

48. In violation of the WLAD, RCW 49.60 et al, Defendant unlawfully discriminated against Plaintiff based on gender after terminating her employment and hiring Goodlin, who is male, for a substantially similar position.

COMPLAINT FOR DAMAGES - 9

Holland v. Unified Strategies Group, Inc.

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

C.  Third Cause of Action – Unlawful Discrimination Under the WLAD Based on Age

49.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

50.    In violation of the WLAD, RCW 49.60 et al, Defendant unlawfully discriminated against Plaintiff based on age by terminating her employment and then hiring Goodlin, who upon information and belief was a person under the age of 40.

D.  Fourth Cause of Acton – Violation of the Consumer Protection Act

51.    Plaintiff re-alleges the foregoing paragraphs as if fully set forth herein.

52.    In violation of the Consumer Protection Act, Defendant unlawfully deceived Plaintiff by promising her a certain and specific bonus for services that she provided under terms that she met as an employee of the Defendant. Plaintiff was terminated before she received this promised bonus, but after she contributed all the necessary work to reaching the 6,000 store requirement.

**V. Jury Demand and Prayer for Relief**

WHEREFORE, as Plaintiff has fully stated her claims against Defendant, USG, Plaintiff, Lynn Holland, hereby prays for the following relief:

53.    Judgment against Defendant for damages in an amount to be proven at jury trial, including lost past wages, the value of benefits, "front pay" and benefits through the time of trial and for a reasonable period into the future, compensatory damages, punitive damages and all other actual damages pursuant to RCW 49.60 and other applicable law;

54.    For pre-judgment and post-judgment interest, as allowed by law;

55.    For double damages and liquidated damages;

56.    For an award of reasonable attorney fees and actual costs;

57.    For an order that Defendant pay Plaintiff for any and all tax consequences

COMPLAINT FOR DAMAGES - 10

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

associated with the damages and costs awarded; and

58.    For such other and further relief as this Court deems just and equitable.

### VI. Leave to Amend

59.    Plaintiff reserves the right for leave to amend all pleadings and causes of action as additional facts become known.

DATED this 25ᵗʰ day of August, 2017.

ROBERT S. MILESNICK, WSBA #43737
Attorney for Plaintiff

COMPLAINT FOR DAMAGES - 11

Holland v. Unified Strategies Group, Inc.

Robert S. Milesnick
Milesnick Law, PLLC
1914 Broadway Street
Vancouver, WA 98663
Phone (360) 213-0799
FAX: (360) 693-5783
rob@milesnicklaw.com

# EXHIBIT 2

COPY
ORIGINAL FILED

AUG 2 5 201/

Scott G. Weber, Clerk, Clark Co

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

LYNN HOLLAND,

              Plaintiff,

    vs.

UNIFIED STRATEGIES GROUP, INC.,

              Defendant.

No.   **17 2 0 1 9 5 4 6**

SUMMONS

TO THE DEFENDANT:

    A lawsuit has been started against you in the above-entitled Court by the Plaintiff. Plaintiff's claims are stated in the written complaint, a copy of which is served upon you with this summons.

    In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned person within 20 days after the service of this summons if served within the State of Washington, or 60 days after the service of this summons if served outside the State of Washington, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the Plaintiff is entitled to what is asked for because you have not responded. If you serve a

SUMMONS - Page 1 of 2

ROBERT S. MILESNICK
MILESNICK LAW, PLLC
1914 BROADWAY STREET
VANCOUVER, WA 98663
PHONE (360) 213-0799
FAX (360) 213-0030

notice of appearance on the undersigned person, you are entitled to notice before a default

judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the Court. If you do so, the

demand must be in writing and must be served upon the person signing this summons. Within 14

days after you serve the demand, the Plaintiff must file this lawsuit with the Court, or the service

on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so

that your written response, if any, may be served on time.

This summons is issued pursuant to RCW 4.28.180 and CR 4.

DATED this 25ᵗʰ day of August, 2017.

ROBERT S. MILESNICK, WSBA #43737
Attorney for Plaintiff

SUMMONS - Page 2 of 2

ROBERT S. MILESNICK
MILESNICK LAW, PLLC
1914 BROADWAY STREET
VANCOUVER, WA 98663
PHONE (360) 213-0799
FAX (360) 213-0030
ROBERT@MILESNICKLAW.COM

# EXHIBIT 3

COPY
ORIGINAL FILED

AUG 2 5 2017

Scott G. Weber, Clerk, Clark Co.

COPY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF CLARK

LYNN HOLLAND,

                      Plaintiff,

      v.

UNIFIED STRATEGIES GROUP, INC.,

                      Defendant.

No. **17 2 01954 6**

NOTICE OF ASSIGNMENT TO
JUDICIAL DEPARTMENT AND
SETTING SCHEDULING
CONFERENCE DATE (LR40(C))

Judge: Vanderwood
Department: 3

**Notice to Plaintiff/Petitioner(s):**

- Case filed, then served: Plaintiff(s)/Petitioner(s) shall serve on all parties a copy of this Notice of Assignment to Judicial Department on the Defendant(s)/Respondent(s) along with a copy of the Summons and Complaint.
- Case served, then filed: Plaintiff (s)/Petitioner(s) shall serve on all parties a copy of this Notice of Assignment to Judicial Department within ten (10) days of filing.
- Service by publication pursuant to court order: Plaintiff(s)/Petitioner(s) shall serve on all parties a copy of this Notice of Assignment to Judicial Department within ten (10) days of the Defendant(s)/Respondent(s) first response or appearance.

///
///

NOTICE TO JUDICIAL
DEPARTMENT - Page 1 of 2

ROBERT S. MILESNICK
MILESNICK LAW, PLLC
1914 BROADWAY STREET
VANCOUVER, WA 98663
PHONE (360) 213-0799
FAX (360) 213-0030
ROB@MILESNICKLAW.COM

Failure to appear on the date below may result in dismissal of the case by the Court.

**Mandatory Scheduling Conference Date:** Jan 5 2018 at 9:00 A.M.

At the time of the mandatory hearing, the Court will adopt a Case Scheduling Order which will include the trial date.

August 25, 2017
Date

Robert S. Milesnick, WSBA #43737
Attorney for Plaintiff

1914 Broadway Street
Vancouver, WA 98663
(360) 213-0799
rob@milesnicklaw.com

NOTICE TO JUDICIAL
DEPARTMENT - Page 2 of 2

ROBERT S. MILESNICK
MILESNICK LAW, PLLC
1914 BROADWAY STREET
VANCOUVER, WA 98663
PHONE (360) 213-0799
FAX (360) 213-0030
ROB@MILESNICKLAW.COM